UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID LOPEZ MAYRENA,

    Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

    Respondent.

Case No. 24-0479-DGE-SKV

REPORT AND RECOMMENDATION

I.     INTRODUCTION

Petitioner David Lopez Mayrena[1] is currently detained by United States Immigration and Customs Enforcement ("ICE") at the Jena Transfer Staging Facility in Alexandria, Louisiana.[2] Department of Homeland Security Online Detainee Locator System, https://locator.ice.gov/ (August 22, 2024). Proceeding pro se, Petitioner brought this 28 U.S.C. § 2241 habeas action to obtain release from detention or a bond hearing. Dkt. 7. Now pending before the Court is the

---

[1] As discussed herein, David Lopez Mayrena is apparently an alias formerly used by Petitioner. Dkt. 9 at 1 n. 1. His real name is Devin Argenis Lopez Diaz. *Id.* at 6.

[2] At the time of filing his petition, Petitioner was detained at the Northwest ICE Processing Center in Tacoma, Washington. *See* Dkt. 7. According to the ICE Detainee Locator Website, Petitioner was then transferred to the Pine Prairie Correctional Facility in Pine Prairie, Louisiana and only recently transferred to the Alexandria Staging Facility.

REPORT AND RECOMMENDATION - 1

Government's Return Memorandum and Motion to Dismiss. Dkt. 9. Petitioner did not file a response. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends the Government's Motion to Dismiss be GRANTED, Petitioner's habeas petition be DENIED, and this action be DISMISSED.

## II.     BACKGROUND

Petitioner is a native and citizen of Nicaragua who was encountered by United States Customs and Border Patrol ("CBP") in the Rio Grande Valley, Texas, on January 20, 2022. Dkt. 10 at ¶3. CBP determined Petitioner had unlawfully entered the United States from Mexico and served him with a Notice to Appear ("NTA"). *Id.* He was charged as removable under the Immigration and Nationality Act ("INA") § 212(a)(6)(a)(i), and an initial hearing date was set for his appearance in immigration court on April 26, 2023. *Id.* Petitioner was released on his own recognizance. *Id.*

While on release, Petitioner was arrested for Aggravated Assault with a Deadly Weapon – Domestic Violence, Texas Penal Code § 22.02(a)(2). *Id.* at ¶4. He was then arrested for Burglary of Habitation, Texas Penal Code § 30.02(c)(2) on April 5, 2023. *Id.* at ¶5. Petitioner was unable to appear for his immigration hearing while incarcerated and an immigration judge in New Orleans ordered him removed to Nicaragua in absentia. *Id.* at ¶6. On June 23, 2023, Petitioner was convicted of two Texas Penal Code Class A misdemeanors and sentenced to 75 days of confinement. *Id.* at ¶7. On June 26, 2024, he was transferred into ICE custody at the Prairieland Detention Center ("PDC") in Alvarado, Texas. *Id.* at ¶8. The United States Department of Homeland Security ("DHS") moved the immigration court in New Orleans to reopen Petitioner's immigration case and to have his case transferred to Dallas, Texas. *Id.* at ¶9. Petitioner appeared before an immigration judge on July 13, 2023, and a future hearing date was

set to allow him time to find an attorney. *Id.* at ¶10. At a hearing on August 16, 2023, Petitioner requested more time to find an attorney and the immigration judge denied his request. *Id.* at 11. Petitioner admitted the allegations in the NTA and conceded the charge of removability. *Id.* On September 29, 2023, an immigration judge found no applications for relief had been filed on Petitioner's behalf and ordered him removed to Nicaragua. *Id.* at ¶12.

On October 2, 2023, ICE requested travel documents for Petitioner under the name "David Lopez Mayrena." *Id.* at ¶13. Nicaragua denied the request that same day because there was no person registered in the Nicaraguan Central Registry of Persons under that name. *Id.* On October 17, 2023, ICE asked Petitioner to get a copy of his cedula or to provide his cedula number. *Id.* at ¶14. Petitioner responded that he lost his cedula card and did not know his cedula number. *Id.* He was transferred to the Northwest ICE Processing Center on October 26, 2023, and provided ICE with a cedula number four days later. *Id.* at ¶¶ 15-16. On November 27, 2023, Headquarters RIO ("HQ-RIO") informed the ICE Office of Enforcement and Removal Operations ("ERO") that Petitioner's travel documents were pending. *Id.* at ¶ 17. One month later, HQ-RIO advised that his travel documents were put on hold by the Nicaraguan Consulate, then re-advised the documents were still pending on January 4, 2024. *Id.* at ¶¶18-19. The travel document request was rescinded by HQ-RIO on April 9, 2024, because the request had been submitted under Petitioner's alias. *Id.* at ¶20. That same day, ERO obtained Petitioner's birth certificate and submitted a new travel document request under the name Devin Argenis Lopez Diaz. *Id.* at ¶21. The travel documents were placed on hold by the Nicaraguan Consulate on April 29, 2024, and Petitioner refused to speak with ICE personnel when contacted about his identity on May 1, 2024. *Id.* at ¶¶ 22-23. ICE served Petitioner with a Notice of Failure to comply, which he refused to sign. *Id.* at 23. On May 30, 2024, Petitioner provided ICE with a

REPORT AND RECOMMENDATION - 3

new cedula number. *Id.* at ¶ 24. The next day, he provided a copy of his birth certificate. *Id.* at 25. On June 3, 2024, the Nicaraguan Consulate issued his travel documents. *Id.* at 26.

Petitioner moved for *in forma pauperis* status before this Court, attaching his proposed petition, on April 10, 2024. Dkt. 1-1. After a filing deficiency was corrected, Petitioner's petition was filed with the Court on May 10, 2024. Dkt. 7. In his petition, Petitioner argues his continued detention beyond the 90-day removal period presumptively allowed under 8 U.S.C. § 1231(a)(1)(A) violates his Fifth Amendment due process rights. *Id.* at 1-2. He requests that the Court order either that he be removed to Nicaragua or that he be released from detention. *Id.* at 3. Petitioner contends he has "cooperated with his final order to the best of his ability awaiting a travel document from his consulate whom [sic] assures that they can not [sic] provide a travel document in the foreseeable future." *Id.* In its motion to dismiss, the Government argues that Petitioner's detention is lawful, that his removal was prolonged by his use of an alias and failure to cooperate in effectuating his removal, that there is a significant likelihood of his removal in the reasonably foreseeable future, and that the petition should be dismissed. Dkt. 9.

### III.    DISCUSSION

Title 8 U.S.C. § 1231 governs the detention and release of noncitizens who have been ordered removed. Under § 1231(a), DHS[3] is required to detain a noncitizen during the "removal period," which is normally limited to 90 days. §§ 1231(a)(2), (a)(1)(B). In this case, the removal period began on September 29, 2023, the date Petitioner's removal order became administratively final. *See* § 1231(a)(2)(B)(i); Dkt. 10 at 12. However, the removal period may

---

[3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

be extended beyond 90 days where a noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." § 1231(a)(1)(c); 8 C.F.R. § 241(g)(1)(ii). In such a case, the removal period continues until the noncitizen cooperates with their statutory obligations. § 241.4(g)(1)(ii). "Once the [noncitizen] has complied with [their] obligations under the law, [ICE] shall have a reasonable period of time in order to effect the [noncitizen's] removal." § 241(g)(1)(ii).

The Government contends Petitioner acted to prevent his removal by providing an alias instead of his real name at the time of his arrest.[4] Dkt. 9 at 4 & 7. This led ICE to request Petitioner's travel documents under the alias, which led to the delay in Petitioner's travel documents being issued. *Id.* The Government further contends Petitioner began to cooperate with his statutory obligations when he provided his correct cedula number on May 30, 2024, and provided his birth certificate the following day. *See id.* at 4. According to the Government, Petitioner's removal period extended 90 days from when he began to cooperate and now expires on August 28, 2024. *Id.* But § 1231(a)(1)(C) does not re-start the removal period once a petitioner begins to cooperate. Rather, it gives ICE a "reasonable period of time" to remove a petitioner once he or she has complied with their statutory obligations. § 241.4(g)(1)(iii). Petitioner does not address whether the period of his detention since he began to cooperate at the end of May 2024 is or is not reasonable.

---

[4] The Court notes that although the documents regarding Petitioner's arrest, detention, and related matters are in the name "David Lopez Mayrena," Petitioner *signed* those documents in his own writing with the name "Deybin Arjenis Lopez" or "Deybin Arjenis Lopez Mairena" at least as early as January 25, 2022. *See* Dkt. 11-3 at 2; *see also* Dkt. 11-4 at 1-3. The variability between these names suggests ICE should have been on notice that "David Lopez Mayrena" may not have been Petitioner's real name.

REPORT AND RECOMMENDATION - 5

Even if Petitioner had cooperated from the outset and his removal period expired in December 2023, however, ICE would still be empowered to continue his detention under § 1231(a)(6). That provision grants ICE the discretion to detain beyond the removal period any noncitizen, such as Petitioner, who has been ordered removed and found inadmissible under section 8 U.S.C. § 1182. *See also* § 212.[5]

There are, of course, constitutional limits to ICE's authority to detain Petitioner pursuant to this statute. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about that individual's removal from the United States and does not permit "indefinite" detention. 533 U.S. at 701. The Supreme Court found it "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief. *Id.* The six-month presumption "does not mean that every [noncitizen] not removed must be released after six months. *Id.* To the contrary, [a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Nevertheless, courts must remember that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

---

[5] The regulations for implementing 8 U.S.C. § 1182 are at 8 C.F.R. § 212.

Under §1231(a)(6), Petitioner's presumptively reasonable 6-month period of detainment following entry of his final removal order expired in March 2024. The burden is on him to demonstrate that there is no significant likelihood he will be removed in the reasonably foreseeable future, and he has not met that burden here. *See Zadvydas*, 533 U.S. at 701. Within less than a week of Petitioner's provision of his correct cedula number and birth certificate to ICE, Nicaragua issued Petitioner's travel documents. It is worth noting this occurred *after* Petitioner submitted his petition for habeas relief, and he did not submit a response brief to the Government's motion to dismiss. Petitioner's only argument in support of his detention being indefinite is that the Nicaraguan Consulate has assured it "can not [sic] provide a travel document [for Petitioner] in the foreseeable future." Dkt. 7 at 3. That argument is moot now that his travel documents have been issued. Moreover, the Government urges that the likelihood of Petitioner being removed "in the reasonably foreseeable future" is "significant" because "Nicaragua is accepting individuals for removal . . . and flights are regularly scheduled to Nicaragua." Dkt. 9 at 4-5. Finally, as mentioned above, Petitioner was recently transferred to the Jena Transfer Staging Facility in Alexandria, Louisiana, which may be a sign that his removal to Nicaragua is imminent. Although Petitioner has at this point been detained beyond the presumptively reasonable six-month period, he has not demonstrated that his removal is not significantly likely to occur in the reasonably foreseeable future. Accordingly, Petitioner is not entitled to habeas relief.

Petitioner also appears to request a bond hearing in his petition. *See* Dkt. 7. The Government does not address this issue in its motion to dismiss. Under *Zadvydas*, however, § 1231 authorizes postremoval detention for noncitizens such as Petitioner until the point at which "removal is no longer reasonably foreseeable." 533 U.S. at 699. As discussed above,

Petitioner has not made such a showing here.  Consequently, ICE has the authority to continue his detention and a bond hearing at this point would be futile.

IV. CONCLUSION

The Court recommends the Government's motion to dismiss be GRANTED, Petitioner's habeas petition be DENIED, and this action be DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be DENIED.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed.  Responses to objections may be filed by **the day before the noting date**.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 13, 2024**.

Dated this 23rd day of August, 2024.

S. KATE VAUGHAN
United States Magistrate Judge